UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TOBIAS BOYLAND,
                              Petitioner,


v.                                                          **DECISION
                                                            AND ORDER**

                                                            14-CV-1047

DALE ARTUS,
Superintendent Attica Correctional Facility,
                              Respondent.

_____


      Petitioner seeks *habeas corpus* relief pursuant to 28 U.S.C. §2254. Petition [1], p.

2.[1]  The parties have consented to my jurisdiction pursuant to 28 U.S.C. §636(c). [10]. For the

following reasons, the petition is denied.


## BACKGROUND

      On April 1, 2010, petitioner was convicted on three counts of second degree

criminal possession of a weapon and one count of fourth degree criminal possession of a weapon

after a jury trial in State of New York Supreme Court, County of Erie. Id. Petitioner's conviction

was based upon the discovery of various weapons during the search of his residence at 45

Harvard Place on June 23, 2009. *See* Id. at p.3. The search was the part of an investigation into

petitioner's alleged violations of the Fair Debt Collection Practices Act ("FDCPA"). *See* June 22,

2009 warrant application, ¶1.[2]  Petitioner, along with his girlfriend Kayla Pritchett and other

_____

[1] Bracketed numbers refer to ECF documents.

[2] The June 22, 2009 warrant application, signed by Investigator Michael McCartney, an investigator with the New York State Attorney General's Office, is among the documents included as Exhibit F to the Respondent's Exhibits manually filed with the Clerk of the Court ["Respondent's Exhibits"].

business associates, was suspected of possessing an illegally obtained debt portfolio and impersonating police to coerce collection of those debts. Id. ¶ 9. Investigators found a pattern of abusive collection practices and deliberate obfuscation of those practices through multiple corporate names, phone numbers, bank accounts, and locations. Id. ¶¶ 23, 39. Investigators conducted surveillance of the collection operations at four commercial locations, as well as at petitioner's residence at 45 Harvard Place. Id. ¶ 47.

The warrant application included a 73-page affidavit signed by Investigator McCartney which stated that petitioner, along with at least four others, was using stolen debt portfolio databases "in a scheme to defraud and steal money from consumers by authorizing and engaging in a course of conduct portraying themselves as police officers and other law enforcement officials". Id. at ¶9. He stated that the debt portfolios had been "stolen" from a Texas corporation that buys and sells debt portfolios. Id.

The warrant application discussed petitioner's use of "elaborate subterfuge" to conceal the true location and identity of the operations, and used various means – including extortion - to obtain money from consumers. Id. at ¶23. It included detailed evidence that petitioner's businesses routinely made scripted telephone calls designed to instill fear in the minds of consumers that if they failed to make immediate arrangements for the payment of a debt that they would be charged with a crime, arrested and put in jail. Id. Individuals working at petitioner's businesses pretended to be state, federal or local law enforcement officers acting within the scope of their duties to give legitimacy to these threats. Id. Sometimes the actual debt owed by the debtor was non-existent or less than the amount demanded. Id.

The warrant application also identified approximately 28 business entities or entity names which petitioner utilized in connection with this scheme. (Id. at p. 12, n. 5).

Further, it included information provided by a former employee petitioner had hired to be the supervisor of one of his "call centers". Id. at ¶24(G).[3] According to this former employee, it was common practice to inflate the amount owed so that they could offer a settlement or compromise for a higher amount - one which sometimes exceeded the true amount of the debt owed. Id. at ¶24(H).

The warrant application also presented several examples of the harassment and threats used by petitioner's businesses to intimidate and coerce individuals to make payments, sometimes for debts that they did not owe. Id. at ¶¶25-46. For example, one individual told investigators that he was threatened with the arrest of his wife if he failed to pay a debt that had been discharged in an earlier bankruptcy proceeding. Id. at ¶32.

The warrant application included information suggesting in addition to utilizing at least four commercial business locations, that petitioner would meet with some of his call center employees at his residence at 45 Harvard Place. Id. at ¶¶47(B)-47(G), 78-85. Specifically, the warrant application described surveillance reflecting that on several occasions individuals observed at one of petitioner's commercial locations would go to 45 Harvard Place during business hours carrying folders or other devices containing papers. Id. at ¶¶47(B)-47(G).

The warrant application indicated that surveillance at petitioner's home revealed that he owned a Rottweiler, a breed of dog purportedly known for its propensity for violent behavior. Id. at ¶82. In addition, one of petitioner's former employees stated that he knew an

---

[3]   This individual stated that the call center he worked at collected between $280,000 and $360,000 per month. Id.

individual who had sold guns to petitioner and Dellian Sharp (one of petitioner's business associates in the alleged fraudulent debt collection scheme). Id. at ¶83.[4]

Based upon the warrant application, on June 22, 2009, Erie County Court Judge Michael L. D'Amico issued a search warrant authorizing the search of petitioner's various commercial locations and his residence at 45 Harvard Place, which was believed to be the lower unit of a two-family house. R.[5] at p.139.[6] On June 23, 2009, Investigator McCartney, others from the New York State Attorney General's Office and an Erie County SWAT team, led by Officer Gregory Savage,[7] executed the warrant at petitioner's residence. R. at pp.288, 138.

Pursuant to the initial warrant, the SWAT team entered the lower unit and conducted a protective sweep. R. at p.181. They encountered a 19-year old women was encountered in one of the bedrooms on the first floor. Id. During the protective sweep Officer Savage found a stairway connecting the first floor to the second floor. R. at p.190. He observed no obstacles to impede traffic between the two floors. R. at p. 191. The doorways adjoining the stairway were wide open, and he heard voices from upstairs. R. at p.191-93. For safety purposes, he extended the protective sweep to the upper level. R. at pp.295-97. Upon entering the second floor, Officer Savage had "no doubt" the two units had been converted to a single family dwelling. R. at p.193. On the second floor he encountered Ms. Pritchett, and two small children.

---

[4]   Although not mentioned in the warrant application, it appears that the officers were also aware that petitioner and Dorian Wills, another one of his associates in the debt collection operation, had been previously arrested for armed robbery. R. 155-56.

[5]   References designated "(R.___)" are to the Fourth Department record on appeal, which includes the trial transcript, and was manually filed with the clerk of the court.

[6]   At the time they applied for the initial warrant, the police believed that the upper apartment of the house was a separate and vacant unit. R. at p.212.

[7]   The SWAT team participated because investigators had been advised that petitioner was possibly armed and that there was a "heightened" possibility that there may be weapons in the house. R. at p. 179, 186.

R. at pp. 183, 263. While checking to see whether individuals were hiding in a walk-in closet, Officer Savage found an assault rifle on the closet floor and seized it. R. at p.297.

Simultaneously with the protective sweep at 45 Harvard Place, petitioner was stopped in his vehicle a few blocks away from his residence. R. at p. 158-59.[8] Upon being frisked by Investigator Thomas Vivian, petitioner was discovered to be in possession of a handgun and arrested. R. at p.161-62. Petitioner was then brought back to 45 Harvard Place. R. at p. 163.

Once the protective sweep was completed, Officer Savage advised Investigator McCartney of what he observed on the second floor during the protective sweep. Investigator McCartney entered the residence and walked through the upper level to confirm that it was a single family home. He then sought to obtain an amended search warrant. R. at p.214-15.

At this point, the search of the residence, even of the first floor, was delayed until Investigator McCartney obtained an amended warrant. R. at p. 211. At 10:25 a.m. on June 23, 2009, Judge D'Amico issued an amended warrant[9] allowing the search of the second floor of 45 Harvard Place ["the amended warrant"]. R. at p.422. The police then executed the amended warrant for the full dwelling and found several more weapons and $35,000 in cash in the residence's second floor. R. at pp. 211, 428-29.

Petitioner was subsequently indicted on six counts of second degree criminal possession of a weapon, in violation of N.Y. Penal Law §265.03, and one count of fourth degree

---

[8]   Just prior to the time the police had intended to execute the search warrant at 45 Harvard Place, petitioner was observed outside the residence walking a dog, and then (after letting the dog back in the house) entering his vehicle and driving away. R. at pp. 157-58.

[9]   In support of the amended warrant, Investigator McCartney submitted an affidavit dated June 23, 2009, ["the June 23, 2009 warrant application"] providing new information regarding the fact that the residence was a single family home, and expressly incorporating his June 22, 2009 affidavit in support of the original warrant. See June 23, 2009 warrant application, among the documents attached as Exhibit F to Respondent's Exhibits.

criminal possession of a weapon, in violation of N.Y. Penal Law §265.01. Petition [1], p.3; R. at p.3.

## PROCEDURAL HISTORY

Petitioner was represented by Anthony J. Lana, Esq. at trial and in connection with his direct appeal to the Fourth Department. Prior to trial, Mr. Lana moved to suppress all of the seized weapons from evidence. R. at p.111. Mr. Lana argued that the various entries into the second floor of 45 Harvard Place, first by the SWAT officers during the protective sweep and then by Investigator McCartney, constituted searches beyond the scope of the initial warrant. R. at pp.126-27. He further argued that the search conducted after the amended warrant had been issued was also illegal. R. at pp.128-29.  However, Acting New York State Supreme Court Justice M. William Boller determined that the protective sweep was reasonable under the circumstances, and upon review of the warrants and warrant applications, found that both the initial and amended warrants were supported by probable cause. Id. at pp.137-39.[10]

On April 1, 2010, petitioner was convicted of three counts of second degree criminal possession of a weapon and one count of fourth degree criminal possession of a weapon. R. at p.631.  On direct appeal, still represented by Mr. Lana, petitioner argued, among other things, that the firearms discovered at 45 Harvard Place should have been suppressed. *See* Respondent's Exhibits, Exhibit B.  The Fourth Department affirmed the conviction on December 30, 2010. *See* People v. Boyland, 79 A.D.3d 1658 (4th Dep't 2010). On October 4, 2011, Mr.

---

[10]    Justice Boller did suppress the gun seized from petitioner during the traffic stop and frisk because the warrant issued by Judge D'Amico authorized the search of petitioner's person only if he was present at the residence during the execution of the search warrant (R. at p.137).

Lana filed an Application for Leave to Appeal to the Court of Appeals. *See* Respondent's
Exhibits, Exhibit C.

On or about November 10, 2011, petitioner filed his first *pro se* writ of error
*coram nobis. See* Respondent's Exhibits, Exhibit D.  Petitioner argued that Mr. Lana had
provided ineffective assistance of counsel at trial and upon appeal. Id.  In an Order entered
January 31, 2012, the Fourth Department summarily denied this *coram nobis* motion. Id., *see
also* People v. Boyland, 92 A.D.3d 1266 (4th Dep't 2012).

In December 2011, petitioner retained Leigh E. Anderson, Esq. to represent him
in the proceedings before the New York Court of Appeals. Petition [1], p.8. The Court of
Appeals affirmed conviction on November 19, 2012. People v. Boyland, 20 N.Y.3d 879 (2012).

On or about January 12, 2013, petitioner filed a second *pro se* writ of error *coram
nobis.* Respondent's Exhibits, Exhibit E.  Petitioner again argued that Mr. Lana had provided
ineffective assistance of counsel on appeal. Id. This application was denied by the Fourth
Department on March 15, 2013. Id., *see also* People v. Boyland, 104 A.D.3d 1261 (4th Dep't
2013).

On November 13, 2013, on petitioner's behalf, Ms. Anderson filed a motion
pursuant to §440.10 of the New York Criminal Procedure Law ("NYCPL") seeking to vacate
petitioner's judgment of conviction.  Respondent's Exhibits, Exhibit F.  In that motion, petitioner
raised the constitutional argument at issue in this proceeding, namely that Mr. Lana was
ineffective in part because he failed to obtain and challenge the search warrant affidavits in an
effort to suppress the weapons found at 45 Harvard Place. Respondent's Exhibits, Exhibit F,
Affidavit in Support of Motion to Vacate Judgment of Conviction, at pp.5, 6.

The §440.10 motion was denied by Justice Boller on March 21, 2014 (Respondent's Exhibit, Exhibit F), and on July 8, 2014, the Fourth Department denied leave to appeal. Id.[11] Petitioner subsequently filed this petition for a writ of *habeas corpus*, and now repeats his claims of ineffective assistance of counsel and of unreasonable search and seizure. Petition [1], p.2.

## ANALYSIS

### A.  Timeliness

Respondent does challenge the timeliness of the petition.

### B.  Exhaustion

In the interest of comity and in keeping with the requirements of 28 U.S.C. §2254(b), federal courts will not consider a constitutional challenge that has not first been "fairly presented" to the state courts. See Cornell v. Kirkpatrick, 665 F.3d 369, 375 (2d Cir.2011); Jackson v. Conway, 763 F.3d 115, 133 (2d Cir.2014).  A state prisoner seeking federal habeas corpus review must first exhaust his available state remedies with respect to the issues raised in the federal habeas petition.  Rose v. Lundy, 455 U.S. 509 (1982). Petitioner bears the burden of proving exhaustion. Thornton v. Smith, 2015 WL 9581820, *10 (E.D.N.Y.  2015).

To meet this requirement, the petitioner must have raised the question in a state court and put the state appellate court on notice that a federal constitutional claim was at issue. "Passage through the state courts, in and of itself, is not sufficient". Picard v. Connor, 404 U.S. 270, 275 (1971). To provide the State with the necessary "opportunity", the prisoner must fairly

---

[11]  Both the March 21, 2014 decision by Justice Boller and the July 8, 2014 denial of leave to appeal by the Fourth Department are included in the documents designated as Exhibit F to the Respondent's Exhibits.

present his claim in each appropriate state court (including a state supreme court with powers of

discretionary review), alerting that court to the federal nature of the claim and giving the state

courts one full opportunity to resolve any constitutional issues by invoking one complete round

of the State's established appellate review process. O'Sullivan v. Boerckel, 526 U.S. 838, 845,

(1999). "Specifically, [petitioner] must have set forth in state court all of the essential factual

allegations asserted in his federal petition; if material factual allegations were omitted, the state

court has not had a fair opportunity to rule on the claim." Daye v. Attorney General of the State

of New York, 696 F.2d 186, 191–92 (2d Cir.1982) (*en banc*).

  The petition in this case, filed by Ms. Anderson on behalf of petitioner, asserts

only one claim: that petitioner was denied effective assistance of counsel. Petition [1], p. 9.

Petitioner argues that Mr. Lana failed to obtain copies of the search warrant applications.

Petitioner claims that the applications were insufficient, and would have supported the

suppression of the weapons recovered at 45 Harvard Place. Id. at pp. 10-14. He also asserts that

Mr. Lana's performance was deficient by failing to call Ms. Pritchett to testify that the weapons

found at 45 Harvard Place belonged to her. Id. at p. 15. Petitioner asserted these same arguments

in his §440.10 motion. Petitioner's Exhibits, Exhibit F.  As discussed above, that motion was

denied by Justice Boller, and leave to appeal was denied by the Fourth Department. Therefore,

this claim has been exhausted.

  Petitioner's reply to the Respondent's Answer and supporting Memorandum of

Law included further argument by Ms. Anderson [7], as well as a 52-page *pro se* Memorandum

of Law signed by petitioner himself [7-1].  In addition to providing further support of the

ineffective assistance of counsel claim raised in the petition, petitioner asserted a claim of

"Prosecutorial Misconduct and Actual Judicial Bias" ([7-1], pp.29-35), and argued that the

protective sweep and Investigator McCartney's walkthrough were both illegal ([7-1], pp. 35-52).

Petitioner's Fourth Amendment claims had been presented in connection with his direct appeal.

*See* Respondent's Exhibits, Exhibit B. However, petitioner's prosecutorial misconduct and

judicial bias claims do not appear to be exhausted. Nevertheless, because these claims may be

denied on the merits, the petition may be adjudicated pursuant to 28 U.S.C. §2254(b)(2).


## C. Standard of Review

Under the AEDPA, a district court reviews a state prisoner's application for a writ

of *habeas corpus* "only on the ground that he is in custody in violation of the Constitution or

laws or treaties of the United States". 28 U.S.C. §2254(a). If the state court ruled on the merits of

the constitutional claim, petitioner has the burden to demonstrate that the state court's decision:

> "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding".

28 U.S.C. §2254(d).

A state court decision is contrary to clearly established federal law when it

"arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or

if the state court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts". Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A routine state court

application of clearly established federal law is unlikely to be considered "contrary" for purposes

of AEDPA review. Id. at p. 406.

When the state court does not betray the holding of the correct federal standard,

petitioner's remaining option is to demonstrate that the application of that standard was

unreasonable, which is more than merely incorrect. Grayton v. Ercole, 691 F.3d 165, 174 (2d Cir. 2012) ("[T]he writ may only issue where the state court's application of the law was not only wrong, but unreasonable"). "[E]ven a strong case for [*habeas*] relief does not mean the state court's contrary conclusion was unreasonable". Harrington v. Richter, 562 U.S. 86, 102 (2011). When a state court decision is silent on its reasoning for denying petitioner's constitutional claim, the petitioner must show that there was "no reasonable basis" for the decision. Id. at p. 98.

## D. Petitioner's Fourth Amendment Argument[12]

Petitioner's ineffective assistance of counsel claim is based upon his contention that he was convicted solely on evidence procured from unreasonable searches. Petition [1], p.10. In addition, in his *pro se* Memorandum of Law, petitioner argues that the protective sweep, as well as Investigator McCartney's walkthrough, were illegal, and thus, the weapons were recovered in violation of the Fourth Amendment. Petitioner's Memorandum of Law [7-1], pp. 35-52.

"Where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal *habeas corpus* relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial". Stone v. Powell, 428 U.S. 465, 482 (1976). "Once it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim . . . the court's denial of the claim is a conclusive determination that the claim will never

---

[12] Petitioner has requested an evidentiary hearing "to the extent this Court determines the state record is incomplete". Petition [1], p.2. A petitioner is entitled to discovery "if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise". *See* Bracy v. Gramley, 520 U.S. 899, 904 (2008). Good cause exists when petitioner's specific allegations provide "reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief". Id. at 908-09 (internal quotation marks omitted). Petitioner has not identified any specific gap in the record warranting an evidentiary hearing.

present a valid basis for federal habeas relief". Graham v. Costello, 299 F.3d 129, 134 (2d Cir. 2002).[13]

The Second Circuit has identified two circumstances in which a habeas petitioner may raise a Fourth Amendment claim: "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process". Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992). Whether petitioner received ineffective assistance in this regard "does not affect the application of Stone to [his] Fourth Amendment claims." Kindred v. Colvin, 2014 WL 5662858, *9 (N.D.N.Y. 2014). Thus, a claim of ineffective assistance of counsel in connection with a Fourth Amendment claim, does not constitute an unconscionable breakdown. See Hayes v. Lee, 2015 WL 5943677, *8 (S.D.N.Y. 2015) ("Ineffective assistance of counsel does not constitute an unconscionable breakdown for the purposes of Stone v. Powell.").

Here, petitioner brought a motion to suppress the weapons recovered from 45 Harvard Place. The record reflects that a hearing was conducted and that testimony was provided by Officer Savage, as well as by Investigators Vivian and McCartney. R. at pp. 134-220. A motion to suppress is a "facially adequate" opportunity satisfying the requirement in Stone. McClelland v. Kirkpatrick, 778 F. Supp. 2d 316, 331 (W.D.N.Y. 2011) (Bianchini, M.J.).

Petitioner was afforded an opportunity to fairly and fully litigate the Fourth Amendment issues raised in the petition. Those claims are now barred from independent federal

---

[13]   This is true even where a petitioner argues that the determination by the trial court as to the Fourth Amendment issue was incorrect. McPherson v. Greiner, 2003 WL 22405449, *16 (S.D.N.Y. Oct. 22, 2003) (Petitioner's "contention that the trial court's pre-trial determination was incorrect does not entitle him to federal habeas review."). Indeed, "[e]ven otherwise potentially meritorious Fourth Amendment claims are barred on habeas when the petitioner had a full and fair opportunity to litigate them". Deputy v. Taylor, 19 F.3d 1485, 1491 (3d Cir. 1994).

habeas review. The merits of petitioner's Fourth Amendment claims are therefore relevant only to analyze his Sixth Amendment claim as discussed below. *See* Kimmelman v. Morrison, 477 U.S. 365, 375 (1986) ("Fourth Amendment claim is one element of proof of [petitioner's] Sixth Amendment claim").

## E. Petitioner's Sixth Amendment Claim

Petitioner asserts that Mr. Lana was ineffective because: (1) he did not obtain copies of the warrant applications which would have revealed a lack of probable cause to search 45 Harvard Place; (2) he did not substantially object to the legality of the protective sweep and Investigator McCartney's walkthrough; and (3) he failed to call an alibi witness.[14]

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court stated that the test for an ineffective assistance of counsel claim in a *habeas corpus* case is whether the petitioner received "reasonably competent assistance." Id. at 688. In deciding this question, the court must apply an objective standard of reasonableness under prevailing professional norms. Id. Generally, defense counsel are "strongly presumed to have rendered adequate assistance". Id. at 690. To succeed on such a claim the petitioner must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (*quoting* Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

---

[14] In his §440.10 motion, petitioner argued that he was denied effective assistance of counsel as "secured by the Sixth Amendment to the United States Constitution" as well as the New York State Constitution (but did not present further case law as to either premise). *See* Affirmation of Leigh Anderson dated November 14, 2013 at ¶6, Exhibit F to Respondent's Exhibits. Thus, petitioner presented this claim to the New York courts as a federal constitutional claim. In denying that motion, Justice Boller relied upon People v. Baldi, 54 N.Y.2d 137 (1981), which sets forth the New York standard for effective assistance of counsel. *See* March 21, 2014 Decision and Order at pp.2-3, Exhibit F to Respondent's Exhibits. Although Justice Boller did not cite to Strickland, the Second Circuit has held that "the Baldi test is not contrary to the Strickland test for purposes of §2254(d)(1)". Eze v. Senkowski, 321 F.3d 110, 124 (2d Cir. 2003).

Further, even if defense counsel's performance is found to have been defective, relief may only be granted where it is shown that the defense was actually prejudiced by counsel's errors. Id. at 692. Prejudice is established upon a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The court determines the presence or absence of prejudice by considering the totality of the trial evidence. Id. at 695.

Finally, "where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice". Kimmelman, 477 U.S. at 375. When both AEDPA and Strickland apply, federal review in favor of counsel's effectiveness is "doubly" deferential. Harrington v. Richter, 562 U.S. 86, 98 (2011).

### 1. Search Warrant Applications

Petitioner argues that had Mr. Lana reviewed the search warrant applications, he would have determined that there was no probable cause to search 45 Harvard Place and could have brought a motion to suppress the weapons based on that ground. Petition [1], at p. 13 referring to the Affirmation of Leigh Anderson dated November 14, 2013 submitted in support of the §440.10 motion ["the Anderson Affirmation"].[15]

As discussed above, Investigator McCartney's 73-page affidavit in support of the original search warrant described the illegal activities of petitioner's debt collection operation, including information obtained from a former employee, and various victims. See June 22, 2009 warrant application.

---

[15]   Petitioner asserts similar arguments in his *pro se* Memorandum of Law [7-1], at pp. 25-29.

In addition to utilizing at least four commercial business locations, the warrant application included information that petitioner would meet with employees in his residence at 45 Harvard Place. Id. at ¶¶47(B)-47(G), 78-85. Specifically, the application detailed surveillance reflecting that on several occasions individuals observed at one of petitioner's commercial locations would go to 45 Harvard Place during business hours carrying folders or other devices containing papers. Id. at ¶¶47(B)-47(G).

In denying petitioner's pretrial motion to suppress, Justice Boller expressly stated that he reviewed the "first and second warrants and their applications for 45 Harvard [Place]" and found that probable cause existed to search the entire premises. R. at p. 139. While the sufficiency of the probable cause to search 45 Harvard Place was not specifically raised upon direct appeal, the Fourth Department agreed with Justice Boller's suppression hearing determination finding that the weapons were properly seized subsequent to the issuance of the amended warrant allowing for the search of the entire residence. *See* People v. Boyland, 79 A.D.3d 1658, 1659, (4th Dept. 2010), aff'd, 20 N.Y.3d 879, 979 (2012).

Considering the totality of the circumstances, a fair probability existed that evidence relating to the illegal debt collection scheme would be located at 45 Harvard Place. Thus, probable cause existed to support the issuance of the June 22, 2009 and June 23, 2009 warrants to search 45 Harvard Place. *See* United States v. Salameh, 152 F.3d 88, 112-13 (2d Cir. 1998) ("In deciding whether probable cause exists for a search warrant, a judge must determine whether 'there is a fair probability that contraband or evidence of a crime will be found. . . . [O]nly the probability, and not the prima facie showing, of criminal activity is the standard of probable cause'".).

In any event, the state court determination that probable cause existed to support the issuance of the June 22, 2009 and June 23, 2009 warrants was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court, nor was it an unreasonable determination of the facts in light of the evidence presented. Thus, the alleged failure on the part of Mr. Lana to obtain the search warrant applications did not prejudice petitioner in any respect and fails to support petitioner's claim of ineffective assistance of counsel.

### 2.    The Protective Sweep

Petitioner also argues that the protective sweep by Officer Savage and the subsequent confirming walkthrough by Investigator McCartney were illegal, and that the weapons discovered at 45 Harvard Place should have been suppressed as the fruit of the poisonous tree. Petition [1], at p. 14.

This is primarily a Fourth Amendment claim for which federal habeas relief cannot be granted. To the extent that this argument is offered in support of petitioner's Sixth Amendment ineffective assistance of counsel claim, it is asserted that Mr. Lana "allowed the People to argue, without any substantial objection from defense counsel, that the initial search of 45 Harvard Place second floor was justified as a 'protective sweep' adjunct to the search of the lower level apartment". Petition [1], at pp. 11-12. Further, petitioner argues that "there is no such thing as a 'protective sweep' doctrine pertaining to search warrant execution". Id. at p. 12.[16] The Respondent asserts that the protective sweep was reasonable because the police had been

---

[16]    In his *pro se* memorandum of law, petitioner asserts similar arguments in support of his ineffective assistance claim: that Mr. Lana failed to argue that the protective sweep and Investigator McCartney's walkthrough were unlawful. Petitioner's Memorandum of Law [7-1], at p. 18.

informed that petitioner might have weapons in the home. Respondent's Memorandum of Law [4], at page 16.

Initially, petitioner's argument that protective sweeps are categorically impermissible in connection with the execution of a search warrant is incorrect. In Buie, the Supreme Court held that law enforcement agents executing an arrest inside a home may, "as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." Buie, 494 U.S. at 334. This protective sweep doctrine has been extended to allow officers to "to check for third persons who may destroy evidence or pose a threat to the officers". United States v. Guerrero, 813 F.3d 462, 467 (2d Cir. 2016).

Although Buie involved a protective sweep incident to arrest, courts have applied it outside that context, including with respect to a protective sweep incident to the execution of a search warrant. *See* United States v. Baker, 2010 WL 2465533, *2 (W.D.N.Y. 2010) (officers permitted to perform a protective sweep of the second-floor front apartment to ensure that they would not encounter any harmful surprises while executing a search warrant). Indeed, relying upon Buie, the Second Circuit has held that "the effectuation of an arrest . . . is not the *sine qua non* of a permissible protective sweep". United States v. Miller, 430 F.3d 93, 100 (2d Cir. 2005).

In Miller, the Second Circuit held "that specific, articulable facts giving rise to a reasonable inference of danger may justify a protective sweep in circumstances other than during the in-home execution of an arrest warrant.[17] "Thus, the constitutionality of a protective sweep does not depend on whether that sweep is incidental to a search warrant, an arrest warrant, or a consensual search." United States v. Starnes, 741 F.3d 804, 810 (7th Cir.2013) (collecting cases).

---

[17]   Miller involved officers enforcing an Order of Protection which allowed for the entry of an apartment. Id. at p. 96.

"What matters are the specific facts that would give a reasonable officer, who is lawfully inside a home, a 'reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer in believing that the area swept harbored an individual posing a danger to the officer or others.'" Id. (quoting Buie, 494 U.S. at 327).

A protective sweep may be utilized in the context of a search warrant if the circumstances present an articulable threat to the officers executing the warrant. Therefore, petitioner's argument that Mr. Lana was ineffective because he failed to argue that protective sweeps were impermissible in connection with the execution of a search warrant must fail. Moreover, contrary to petitioner's argument that Mr. Lana did not substantially object to the protective sweep, the record reflects that Mr. Lana *did*, in fact, challenge the legality of the protective sweep. R. 126-28.

In a pretrial suppression motion, Mr. Lana argued that the protective sweep of the second floor exceeded the scope of the initial warrant requiring suppression of the evidence found there. Id. at p. 126-27. He also argued that the prosecution's claim that the protective sweep was necessary for safety purposes was "preposterous", suggesting that persons on the second floor posed no danger to the officers on the first floor. Id. at p. 128. Finally, he argued that Inspector McCartney's walkthrough after the SWAT team had cleared the second floor "underscored the unlawfulness of the police conduct in this instance". Id. While unsuccessful, Mr. Lana did assert a substantial argument challenging the legality of the protective sweep executed at 45 Harvard Place.

Indeed, based upon Mr. Lana's motion, a suppression hearing was held regarding the circumstances and legality of the protective sweep. R. at pp. 151-220. In denying the motion

to suppress, Justice Boller found that the officers executing the original search warrant at 45

Harvard Place discovered that there was free movement between the lower apartment and the

upper apartment, and that they had heard voices and movement coming from the upper

apartment. R. at p. 139. Coupled with the officers' knowledge that petitioner had weapons on his

person or in his residence,[18] and relying upon Buie, Justice Boller determined that the officers

were permitted to conduct a protective sweep of the upstairs apartment. Id.

Petitioner also raised this issue in his direct appeal. The Fourth Department held

that "[w]hen the police officers heard voices upstairs, they properly conducted a protective

sweep of the second floor based upon "articulable facts that warranted a reasonably prudent

officer's belief that the [second floor] might harbor an individual posing a danger to those on the

scene" Boyland, 79 A.D.3d at 1659.  The Fourth Department found that the closet where the rifle

had been found was large enough to conceal five or six people and that the weapon was in plain

view and properly seized. Id.

With respect to these same claims raised in petitioner's §440.10 motion, Justice

Boller noted his earlier ruling on petitioner's suppression motion. Decision and Order dated

March 21, 2014 at p. 2. Justice Boller held that, in any event, because these claims were either

raised upon direct appeal or could have been raised upon appeal but the defendant failed to do so,

they must be denied pursuant to §440.10(2). Id.

Here, the warrant application reflected that the police had been advised by

petitioner's former employee that petitioner and Dellian Sharp (one of petitioner's business

associates) had purchased guns, some of which could possibly be located at 45 Harvard Place.

June 22 2009 warrant application, at ¶¶82-85. In addition, Officer Vivian testified that prior to

---

[18]   The June 22, 2009 warrant application stated that petitioner and one of his associates in the debt collection
operation had obtained "handguns and stuff." June 22, 2009 warrant application at ¶83.

the execution of the search warrant they had been advised that petitioner possessed a gun and

that he and Dorian Wills (yet another one of petitioner's business associates)[19] had been

previously arrested for an armed robbery. R. at p. 155. The officers were also aware of the

presence of a Rottweiler dog, which if aggressive could present a threat to the officers. June 22,

2009 warrant application at ¶82.

Under these circumstances, and upon discovering that the premises had been

converted to a single-family house, the state court determination that it was reasonable for the

officers executing the original search warrant to conduct a protective sweep of both the first and

second floors of 45 Harvard Place was not contrary to clearly established federal law, or an

unreasonable determination of the facts in light of the evidence presented.

Finally, because Investigator McCartney's walkthrough did not yield additional

evidence or observations not already obtained by Officer Savage during the permissible

protective sweep, petitioner does not articulate how he was prejudiced by this event. Petitioner

has not demonstrated that the amended warrant would not have been obtained based upon the

information obtained by Officer Savage during the legal protective sweep. In any event, as noted

above, Mr. Lana did challenge the legality of Investigator McCartney's subsequent walkthrough

of the second floor.  Thus, petitioner's ineffective assistance of counsel claim must also fail on

this ground.

### 3.  Potential Alibi Witness

Petitioner asserts Mr. Lana's performance was deficient because he did not call

Ms. Pritchett, petitioner's girlfriend and the primary resident of 45 Harvard Place, to testify that

she owned the guns discovered during the search. Petition [1], pp.14-15. At trial, Mr. Lana did

---

[19]   *See* June 22, 2009 warrant application at ¶5.

advance the argument that the guns belonged to Ms. Pritchett alone, rather than to petitioner, and refrained only from calling her as a witness. R. at pp.454-55, 563-64. Thus, in his charge to the jury, Justice Boller instructed the jury that "the law recognizes the possibility that two or more individuals can jointly have property in their constructive possession". R. at p.603.

In any event, weighing the credibility of witnesses for the defense is well within the discretion of effective counsel choosing trial strategy. "[C]ounsel's decision as to 'whether to call specific witnesses - even ones that might offer exculpatory evidence - is ordinarily not viewed as a lapse in professional representation'". United States v. Best, 219 F.3d 192, 201 (2d Cir. 2000). Moreover, petitioner has not established that there was a reasonable probability that Pritchett's testimony would have changed the jury's analysis of whether petitioner exercised the threshold control over the area to establish constructive possession.

Finally, as noted by Justice Boller in denying petitioner's §440.10 motion, petitioner has presented no statement by Ms. Pritchett, or other evidence, that the weapons belonged solely to her. Decision and Order dated March 21, 2014 at p. 2. Petitioner has not established that Mr. Lana's decision not to call Ms. Pritchett as a witness rendered his representation deficient or that, but for this failure, there was a reasonable probability that the outcome of the trial would have been different.

In sum, the various grounds asserted by petitioner, considered separately and in the aggregate, do not establish that plaintiff was afforded ineffective assistance of counsel under the standard set forth in Strickland.

### F.  Prosecutorial Misconduct

In his supplemental *pro se* memorandum, petitioner raised the claim that prosecutorial misconduct and judicial bias deprived him of his Sixth Amendment right to a fair trial. Petitioner's Memorandum of Law [7-1], pp. 29-35. Petitioner alleged that the prosecutor and court willingly withheld the warrant affidavits during pretrial and trial proceedings to prevent trial counsel from cross-examining them and attacking their sufficiency. Id. at p.34. Petitioner also asserts that the prosecutor and trial judge recklessly disregarded the truth and must have recognized the omission of key facts about the walkthrough and protective sweep which yielded the amended warrant. Id.

A petitioner asserting a prosecutorial misconduct claim must demonstrate that the alleged misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process". Parker v. Matthews, 132 S. Ct. 2148, 2153 (2012) (internal citation omitted). To determine whether the alleged misconduct requires relief, the Court employs an "all-things-considered" standard, reviewing the severity of the prosecutorial misconduct, any curative measures taken by the court, and the certainty of conviction without the prosecutor's misconduct. Sandoval v. Lee, 2016 WL 2962205, *9 (E.D.N.Y.  2016).

The standard with respect to a judicial bias claim is similarly high. A petitioner claiming bias based upon the rulings or comments by the trial judge must establish that the judge's conduct either improperly influenced the functioning of the jury or "create[d] a risk that the trial [would] not be perceived by the defendant or the public as a fair adjudication of guilt or innocence, presided over by a neutral magistrate obliged to deal evenhandedly between the contending forces of the prosecution and the defense". Daye v. Attorney General of the State of New York, 712 F.2d 1566, 1572 (2d Cir. 1983). To rise to a constitutional level, the "trial judge's

intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a substantial degree before the risk of either impaired functioning of the jury or lack of the appearance of a neutral judge conducting a fair trial exceeded constitutional limits". Id.

Here, petitioner's argument is based upon the meritless assertion that the prosecutor "unreasonably and unprofessionally" failed to provide the defense with copies of the search warrant applications. Petitioner's Pro Se Memorandum of Law [7-1], at p. 34. However, petitioner acknowledges that no request was made for the production of the search warrant applications (which was, in part, the basis for his ineffective assistance of counsel claim). In any event, as discussed above, the failure to obtain the search warrant application did not prejudice petitioner. The search warrant applications reflect that probable cause existed to support the issuance of both the initial and amended search warrants.

Petitioner cites to no evidence in the record reflecting any conspiracy between the prosecutor and Justice Boller. Petitioner has not demonstrated that the conduct of the prosecutor infected the trial with unfairness violating petitioner's due process rights or that Justice Boller's demonstrated any partiality. Thus, his claim for habeas corpus relief on these grounds is denied.

## CONCLUSION

For the reasons discussed above, the petition for habeas corpus relief [1] is denied. Pursuant to 28 U.S.C. § 1915(a)(3), I hereby certify that any appeal from this Order would not be taken in good faith. Therefore, leave to appeal to the Court of Appeals as a poor person is denied. Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed.2d 21 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court

of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate

Procedure.

Dated: September 7,  2016

JEREMIAH J. MCCARTHY
United States Magistrate Judge.